UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**DECISION AND ORDER**
10-CR-108A

v.

OSARUYI EDUWEN,

Defendant.

## I.    INTRODUCTION

Pending before the Court are two motions by defendant Osaruyi Eduwen.

On February 1, 2011, defendant filed a motion for an extension of time to appeal

the judgment entered on August 31, 2010.  On March 2, 2011, defendant filed

what he titled a "Motion for Grant of Writ of Error Coram Nobis Petition Pursuant

to 28 U.S.C. § 1651(a)."  Although defendant's motions technically are two

different filings, they present the same two arguments that defendant wants to

use to set aside his guilty plea and sentence.  The two arguments are that the

defendant's guilty plea was not knowing and voluntary, in part because he did not

know that his guilty plea could serve as the basis for immigration removal

proceedings; and that defendant received ineffective assistance of counsel

because he asked his counsel to file a notice of appeal, and counsel never did

so.  In an Order dated February 3, 2011 (Dkt. No. 17), the Court held that under

Rule 4(b)(4) of the Federal Rules of Appellate Procedure, defendant could not

receive an extension longer than 30 days from entry of judgment.  Noting,

however, that defendant's allegations about the request to file a notice of appeal

implicated *Campusano v. U.S.*, 442 F.3d 770 (2d Cir. 2006), the Court directed

the Government to respond to defendant's allegations.  The Government filed its

response on March 9, 2011.  As the Court requested, the Government's response

included an affidavit from defendant's counsel, Robert N. Convissar.  The Court

has deemed the motions submitted on papers.  For the reasons below, the Court

denies both motions.

## II.    BACKGROUND

This case concerned allegations that defendant tried to enter Canada using

someone else's United States passport.  Defendant is a native of Nigeria who

entered the United States on a B-1 non-immigrant visa in 1997.  Defendant

received non-immigrant employment visas in 2001 and 2002, and unsuccessfully

applied for immigrant status in 2005.  Other than the visas that he received in

1997, 2001, and 2002, defendant never has had legal status in the United States.

On March 7, 2010, defendant arrived at the Peace Bridge port of entry in Buffalo,

New York and crossed it to enter Canada.  Defendant attempted to enter Canada

using what appeared to be a United States passport issued in the name of

Vincent Minott.  Canadian officials refused to admit him and sent him back across

the Peace Bridge.  When defendant reached the primary inspection booths on

the United States side of the Peace Bridge, Customs and Border Patrol ("CBP")

agents refused defendant re-entry and instead referred him to secondary

inspection for further questioning.  Upon further questioning, defendant admitted

that his passport belonged to someone else and that he was trying to enter

Canada not to visit relatives, as he had claimed, but to seek asylum.  CBP agents

then arrested defendant and detained him.  In a criminal complaint filed on March

8, 2010, defendant was charged with knowingly and willfully making a false

statement and possessing a United States passport issued for the use of another

person, in violation of 18 U.S.C. §§ 911, 1001, and 1544.

On April 14, 2010, defendant entered a plea agreement by which he would

plead guilty to the information.  Paragraph 11 set forth that defendant's criminal

history category was I and his offense level was 10, giving him an advisory

sentencing range of 6–12 months.  Paragraph 15 addressed potential

immigration consequences of defendant's guilty plea and read as follows:

> The defendant acknowledges that the defendant is not a citizen of
> the United States and that the defendant is on notice that the
> defendant's ability to enter, remain and/or reside in the United States
> is subject to the laws, regulations and associated policies of the
> Department of Homeland Security.  The defendant understands that
> any effect that the defendant's conviction in this action will have upon
> the defendant's immigration status will be determined by the
> Department of Homeland Security in a separate proceeding.  The
> defendant has had an opportunity to fully determine what the
> consequences of the defendant's conviction may be on the
> defendant's immigration status.

(Dkt. No. 7 ¶ 15.)  In paragraph 20, defendant agreed to waive any right to appeal

a sentence that fell within the advisory range.  The last page of the plea

agreement read as follows, above defendant's signature:

> I have read this agreement, which consists of 10 pages. I have had
> a full opportunity to discuss this agreement with my attorney, Brian
> Comerford, Assistant Federal Public Defender. I agree that it
> represents the total agreement reached between myself and the
> government. No promises or representations have been made to me
> other than what is contained in this agreement. I understand all of
> the consequences of my plea of guilty. I fully agree with the contents
> of this agreement. I am signing this agreement voluntarily and of my
> own free will.

(*Id.* at 10.)

During the plea proceeding, defendant's former counsel, Brian Comerford,

explained to the Court that he reviewed the waiver of indictment and the entire

plea agreement with defendant and that defendant understood his rights. The

Court explained to defendant that he had the right to require the Government to

present the charges against him to a grand jury and, if indicted, to require the

Government to prove its case at trial. Defendant indicated that he understood his

right to grand jury presentation and trial and that no one was forcing him to give

up those rights. Defendant indicated further that he understood all of the terms of

the plea agreement and that he had no questions about them. The Court

consequently accepted the plea of guilty and scheduled sentencing.

On July 9, 2010, the Court held a status conference concerning a letter that

defendant sent directly to the Court complaining about attorney Comerford and

requesting both a new attorney and a withdrawal of his guilty plea. The Court

relieved attorney Comerford and appointed attorney Robert N. Convissar. The

Court held another status conference on July 29, 2010, at which defendant,

through new counsel, withdrew his request to withdraw his plea and reported that

he offered an apology to attorney Comerford for his prior complaints.

On August 10, 2010, the Court sentenced defendant.  At sentencing,

defendant again acknowledged the potential immigration consequences of his

guilty plea as follows:

> THE COURT: People start playing around with passports it just—it involves security of the United States.

> MR. CONVISSAR: And it's punishable by the numbers and the ranges that you're talking about.  He's not denying that, Judge.  But in 2001, 2005 and—2002 and 2005 he had made efforts through immigration and naturalization to upgrade and obtain legal citizenship.  He was denied in those areas.

> THE COURT: Which makes it even worse.

> MR. CONVISSAR: I understand, Judge.

> THE COURT: That's an aggravating factor rather than a mitigating factor.

> MR. CONVISSAR: Well, Judge, what we have here is a 6 to 12 range for which he is found to have accepted responsibility.  He knows that he is going—about to be deported.

> THE COURT: Is he coming back?

> MR. CONVISSAR: Not without permission, Judge.  He understand[s] that fully.

> THE COURT: Does he really?  And you're convinced he understands that?

> MR. CONVISSAR: He does, Judge.  He does.

(Dkt. No. 21 at 4–5.)  This acknowledgment dovetailed with defendant's prior acknowledgment in paragraph 15 of the plea agreement.  The Court sentenced defendant to a term of imprisonment of six months, which was the lowest term within the advisory guideline range of 6–12 months.  The term of imprisonment was to be followed by one year of supervised release and delivery to immigration officials for deportation proceedings pursuant to 18 U.S.C. § 3583(d).

Defendant filed his motion for an extension of time to appeal on February 1, 2011.  In support of his motion, defendant asserted that he did not know about the 30-day deadline for filing a notice of appeal and that his failure to file a timely notice of appeal resulted from ineffective assistance of counsel.  As noted above, the Court issued an order on February 3, 2011 holding that defendant could not receive an extension long enough to allow him to file a notice of appeal.  Out of concern, however, that defendant was alleging that he asked his counsel to file a notice of appeal and that his counsel failed to do so, the Court directed the Government to respond to that allegation.  Meanwhile, defendant filed his second motion on March 2, 2011, challenging his conviction as constitutionally invalid because of ineffective assistance of counsel.  Defendant asserted specifically that counsel failed to advise him of the immigration consequences of pleading guilty.  In opposition to the pending motions, the Government asserted that defendant has not had any legal status in the United States since his second employment visa expired in 2002.  The Government asserted further that defendant has

known that he was facing deportation since at least 2005, when he tried and

failed to obtain immigrant status.  Additionally, the Government asserted that

defendant acknowledged and understood the terms of his guilty plea both in the

plea agreement and in open court.  Finally, the Government attached to its

opposition papers an affidavit from defendant's counsel, attorney Convissar,

confirming that defendant agreed to withdraw his prior motion to withdraw his

guilty plea and that defendant never asked him to file a notice of appeal.

## III.   DISCUSSION

Through all of his arguments, defendant seeks a declaration that he

received ineffective assistance of counsel.  "A convicted defendant making a

claim of ineffective assistance must identify the acts or omissions of counsel that

are alleged not to have been the result of reasonable professional judgment.

The court must then determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally

competent assistance."  *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

"The defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been

different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  *Id.* at 694.  Here, defendant signed a written plea

agreement acknowledging that he understood his guilty plea and the immigration

consequences stemming from it.  The plea agreement also contained a waiver of

appeal rights in paragraph 20.  Through a change of counsel, the Court gave

defendant the benefit of having two different attorneys review his guilty plea with

him.  As a consequence of that review, defendant both accepted his written plea

agreement in open court and withdrew a motion that he had made on his own to

withdraw his plea.  "In no circumstance . . . may a defendant, who has secured

the benefits of a plea agreement and knowingly and voluntarily waived the right to

appeal a certain sentence, then appeal the merits of a sentence conforming to

the agreement.  Such a remedy would render the plea bargaining process and

the resulting agreement meaningless."  *U.S. v. Salcido-Contreras*, 990 F.2d 51,

53 (2d Cir. 1993).

At sentencing, defendant acknowledged through counsel that he

understood the immigration consequences of his plea.  Defendant ultimately

received a sentence that triggered the appellate waiver provisions of paragraph

20 of the plea agreement, meaning that he did not have the right to appeal the

sentence that he received.  In any event, even if defendant had the right to

appeal his sentence, defendant has not offered any evidence, in the form of

letters, notes, or otherwise, indicating that he ever asked his counsel to file a

notice of appeal in the five months that passed between sentencing and his

motion for an extension of time.  The Court thus finds credible counsel's

affirmation that defendant never asked him to file a notice of appeal.  *Cf. Mills v.*

*U.S.*, No. 09 Civ. 4090, 2010 WL 3825732, at *12 (S.D.N.Y. May 20, 2010)

("Given the explicit waiver of appeal in the plea agreement and [defendant's] acknowledgment of that waiver in his allocution, the benefit to [defendant] of receiving only the statutory minimum sentence, the absence of any appealable issues, [defendant's] long delay in raising this issue, and his effort midway through his long period of quiescence to obtain counsel to challenge his sentence in the trial court, we conclude that [counsel's] denial that his client asked him to file an appeal is entirely credible.").  This case did not present any circumstances that required counsel to consult defendant, even absent a request, about appealing in the face of the appellate waiver in the plea agreement.  *Cf. id.* ("As we have observed, [defendant] pled guilty, waived his appellate rights, and received the stipulated sentence.  In short, counsel did not act unreasonably in not consulting him about the possibility of an appeal.").  The Court finds further that defendant's unsuccessful immigration proceedings in 2005 undermine his suggestion that he is facing possible deportation solely as a result of his guilty plea.  *Cf. Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473, 1478 (2010) (finding ineffective assistance where counsel affirmatively told his client not to worry about immigration status because he had lived in the country for more than 40 years).  Under these circumstances, defendant has not established any reason to grant the relief that he seeks.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court denies defendant's motions for

an extension of time (Dkt. No. 16) and for *coram nobis* relief (Dkt. No. 23).

SO ORDERED.

s/ Richard J. Arcara
_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 25, 2011